# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | No. 24-cr-22 (KMM/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Ricardo Rydell Walker, | |
| Defendant. | |

The government charges Defendant Ricardo Rydell Walker with one count of receiving a firearm while under felony indictment in violation of 18 U.S.C. § 922(n) and one count of possession of a firearm by a person adjudicated as mentally defective or committed to a mental institution in violation of 18 U.S.C. § 922(g)(4). Mr. Walker moved to dismiss the indictment, arguing that charges against him violate his Second Amendment rights. In addition, Mr. Walker moved to suppress statements made to law enforcement officers on July 7, 2022 following his arrest. In a Report and Recommendation ("R&R") dated July 8, 2024, United States Magistrate Judge John F. Docherty recommended that Mr. Walker's motion to suppress statements be granted and that his motion to dismiss the indictment be denied. R&R, Doc. 43. The Court extended the deadline for the parties to file objections to the R&R to July 29, 2024. Mr. Walker objects to Judge Docherty's recommendation that the motion to dismiss the indictment be denied. The government did not object to the recommendation that the motion to suppress statements be granted.

## I. Motion to Suppress Statements

In the R&R, Judge Docherty first concluded that, following his arrest on July 6, 2022, and in response to *Miranda* warnings, Mr. Walker clearly and unambiguously invoked his right to counsel. While Mr. Walker was held at the Ramsey County Adult Detention Center, law enforcement officers approached Mr. Walker again on July 7, 2022 to conduct an interview. Mr. Walker made statements during that interview that he seeks to suppress. Judge Docherty found that because Mr. Walker had invoked his right to counsel on July 6th, the July 7th interview violated Mr. Walker's Fifth Amendment right to counsel and granted the motion to suppress statements.

As noted, the government did not object to the R&R's recommended disposition of the motion to suppress.[1] Because no party objected to the recommendation that the motion to suppress be granted, the Court reviews that aspect of the R&R for clear error. *See United States v. Guevara*, No. 21-cr-241 (ECT/DTS), 2024 WL 2862131, at *6 (D. Minn. June 6, 2024) (citing D. Minn. LR 72.2(b); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam)). Based on the Court's careful review, Judge Docherty's recommendation is adopted and the Court grants Mr. Walker's motion to suppress statements.

## II. Motion to Dismiss Indictment

Count One of the Indictment charges Mr. Walker with receiving a firearm while under felony indictment, in violation of 18 U.S.C. § 922(n). Count Two charges

---

[1] On August 15, 2024, the government filed a response to Mr. Walker's objections to the R&R's conclusion regarding the motion to dismiss the indictment, indicating that it would rest on its previous filings. Doc. 47.

Mr. Walker with possessing a firearm as a person adjudicated mentally defective or committed to a mental institution, in violation of 18 U.S.C. § 922(g)(4). Mr. Walker moves to dismiss both counts, arguing that they violate the Second Amendment facially and as applied to him.[2] In the R&R, Judge Docherty applied the framework for analyzing Second Amendment challenges established in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and he recommends that Mr. Walker's motion be denied. Mr. Walker objects to the R&R's legal conclusions that 18 U.S.C. §§ 922(n) and 922(g)(4), as charged in the indictment, do not violate the Second Amendment." Def.'s Objections, Part I at 1–7 & Part II at 7–8, Doc. 46. The Court reviews those objections de novo. As discussed below, the Court agrees with Judge Docherty's recommendation that the motion to dismiss the indictment be denied.

### A. Legal Standard

The R&R correctly sets forth the governing legal, which the Court adopts.

> The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court considered whether the State of New York's handgun licensing regime violated the Constitution. 597 U.S. at 10. In finding that it did, the Court rejected a two-step framework that combined history and means-end scrutiny, which had been adopted by the circuit courts of appeals. *Id.* at 17. Instead, "[i]n keeping with" *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Court

---

[2] In the R&R, Judge Docherty found that Mr. Walker did not present any argument that either § 922(n) or § 922(g)(4) should be applied to others but not to him, nor did he make any arguments based on his individual circumstances. Consequently, Judge Docherty found that his as-applied challenges failed, but he should be given leave to raise such issues at a later time. R&R at 14, 17. Neither party objects to this aspect of the R&R, and the Court agrees that Mr. Walker has not, at this time, presented any as-applied challenge to the constitutionality of either statute.

3

> held "that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. To justify regulating the conduct, "the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* In other words, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. The question for the courts is whether the regulation is "consistent with the Second Amendment's text and historical understanding." *Id.* at 20.

R&R at 10.

When considering whether a modern regulation is consistent with the Second Amendment's text and historical understanding, courts are directed to reason by analogy to determine whether the modern regulation is "relevantly similar" to a historical regulation. *Bruen*, 597 U.S. at 28–29. This requires a court to assess both *how* and *why* the two regulations burden the Second Amendment right. *Id.* at 29; *see also* R&R at 11.

### B. Section 922(n)[3]

In considering Mr. Walker's challenge to § 922(n)'s prohibition on a person's receipt of a firearm while he is under felony indictment, Judge Docherty found that Mr. Walker's alleged conduct is covered by the the Second Amendment's text. However, Judge Docherty concluded that § 922(n) is consistent with the historical tradition of firearms regulation. Judge Docherty found that the statute is consistent with the historical

---

[3] Section 922(n) provides that "[i]t shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to . . . receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

4

tradition of pretrial detention and conditions as demonstrated by both the Bail Reform Act and other significant restrictions placed on indicted defendants throughout our nation's history. Further, Judge Docherty found § 922(n) is consistent with the tradition of restricting firearms from people who present an unacceptable risk of dangerousness, and compared the statute at issue in this case to analogous surety statutes.

Mr. Walker argues that Judge Docherty erred in his historical analysis. He contends that Judge Docherty should not have relied on the Bail Reform Act ("BRA") because it was passed nearly 200 years after the Second Amendment was ratified in 1791. He further contends that the BRA it is not a relevant analogue to § 922(n) because the BRA burdens the right to bear arms in a different way, providing significant procedural protections to defendants, while § 922(n) makes receipt of firearms by all persons under felony indictment. As for the surety statutes, Mr. Walker argues they are an improper analogue because they addressed a general societal fear that those accused of crimes would be more likely to unlawfully use firearms in materially different ways than § 922(n). According to Mr. Walker, the surety laws did not "completely restrict" an accused's right to bear arms, but allowed a person to have a firearm if he established a need for self-defense and posted a bond.

The Court is not persuaded that § 922(n) is unconstitutional. Mr. Walker is correct that Congress did not pass the Bail Reform Act until many years after the Second Amendment was ratified, which makes it a problematic historical analogue. *See Bruen*, 597 U.S. at 36–38 (suggesting that courts should focus on historical analogues from 1791 because post-ratification regulation is less instructive on the historical understanding of the

scope of the Second Amendment right). Nevertheless, the Court finds that § 922(n)'s prohibition on receipt of a firearm while under felony indictment is consistent with historical firearms regulation. Several overarching observations generally inform this conclusion.

First, the Court notes that in *Heller*, the Supreme Court explained that its own historical analytical focus did not call into question "longstanding prohibitions" on firearms possession (such as convicted "felons and the mentally ill"), 554 U.S. at 626–27, and it noted that the list it provided "d[id] not purport to be exhaustive," *id.* at 627 n.26. *See also Bruen*, 597 U.S. 80 (Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations."). Therefore, neither *Heller* nor *Bruen* suggest that a wholesale abandonment of existing firearms regulations is required.

Second, although courts must look for historical analogues, the Second Amendment analysis does not require the Court to identify any "historical *twin*." *Bruen*, 597 U.S. at 30 (emphasis in original). Consequently, the absence of a founding-era law that specifically bars receipt of a firearm by a person under felony indictment is not dispositive of the issue.

Third, the Court notes that the Eighth Circuit has very recently reaffirmed the prohibition on possession of firearms by those convicted of felonies. The Supreme Court vacated and remanded the Eighth Circuit's decision in *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) for further consideration in light of the holding in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). On remand, the Eighth Circuit reaffirmed its conclusion that § 922(g)(1) is constitutional. *United States v. Jackson*, No. 22-2870, 2024 WL 3711155 (8th Cir. Aug. 8, 2024) ("*Jackson II*"). In doing so, the Eighth Circuit explained

that "legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms," including those "who deviated from legal norms or persons who presented an unacceptable risk of dangerousness." *Jackson II*, 2024 WL 3711155, at *7. Though the recent decision in *Jackson II* is obviously addressing the constitutionality of a different statute, the prohibition in § 922(n) shares a broadly similar rationale. Both provisions also restrict access to firearms by individuals who have, in the view of a grand jury, deviated from legal norms, and the motivation for Congress to pass § 922(n) is a judgment that those under felony indictment present an unacceptable risk of dangerousness. *United States v. Rowson*, 652 F. Supp. 3d 436, 465–67 (S.D.N.Y. 2023) (identifying "significant resemblances" between § 922(n) and the prohibition on convicted felons possessing firearms in § 922(g)(1)).

Fourth, the Court notes that the prohibition on receipt of a firearm in § 922(n) is not only temporary, but also does not itself preclude a person under indictment from continuing to possess a firearm that was already in his possession. *See United States v. Kelly*, No. 3:22-CR-00037, 2022 WL 17336578, at *5 (M.D. Tenn. Nov. 16, 2022) (finding § 922(n) did not violate the Second Amendment and noting that its prohibition is "by definition . . . temporary. It lasts only from indictment to conviction or acquittal."); *see also United States*

7

*v. Posada*, 670 F. Supp. 3d 402, 410 (W.D. Tex. 2023) ("[H]istorical detention laws were far more burdensome than § 922(n) is.").[4]

Ultimately, this Court agrees with most lower courts that have addressed constitutional challenges to § 922(n) and concludes that the provision is constitutional. *United States v. Kays*, 624 F. Supp. 3d 1262, 1268 (W.D. Okla. 2022) (finding surety laws to be relevantly similar regulations); *Kelly*, 2022 WL 17336578, at *5 (discussing "common law tradition of gun regulation [that] permitted the disarming of certain classes of individuals based on . . . whether [they] had been peaceable and/or law abiding") (quotations omitted); *Rowson*, 652 F. Supp. 3d at 465–72 (discussing history of "disarming persons perceived as dangerous" and "surety laws" as relevantly analogous); *United States v. Simien*, 655 F. Supp. 3d 540, 551 (W.D. Tex. Feb. 10, 2023) (surety statutes); *United States v. Gore*, No. 2:23-CR-04, 2023 WL 2141032 (S.D. Ohio Feb. 21, 2023); *United States v. Stennerson*, No. CR 22-139-BLG-SPW, 2023 WL 2214351 (D. Mont. Feb. 24, 2023); *United States v. Bartucci*, 658 F. Supp. 3d 794, 803–08 (E.D. Cal. 2023); *United States v. Jackson*, 661 F. Supp. 3d 392, 411–15 (D. Md. 2023); *United States v. Smith*, No. CR 122-081, 2023 WL 3012007 (S.D. Ga. Mar. 29, 2023), *report and recommendation adopted*, No. CR 122-081, 2023 WL 3010178 (S.D. Ga. Apr. 19, 2023); *United States v.*

---

[4] *Cf. United States v. Slye*, No. 1:22-mj-144, 2022 WL 9728732, at *2 (W.D. Pa. Oct. 6, 2022) (finding that a standard pretrial release condition of prohibiting possession of firearms under 18 U.S.C. § 3142(c) was constitutional and explaining that "the Constitution has never guaranteed a criminal defendant's right to pretrial release" so that it would "be illogical to conclude that the Court has the authority to set conditions temporarily depriving an accused of [a litany of] constitutional protections by ordering his detention but lacks the authority to impose far less severe restrictions, such as ordering his release on bond with a firearms restriction").

*Adger*, CR 122-102, 2023 WL 3229933 (S.D. Ga. May 3, 2023), *report and recommendation adopted*, 2023 WL 3627840 (S.D. Ga. May 24, 2023); *United States v. Posada*, 670 F. Supp. 3d 402, 407–411 (W.D. Tex. 2023); *United States v. Weathers*, No. 4:23-cr-00031-WMR-WEJ-1, 2024 WL 2871356 (N.D. Ga. Mar. 11, 2024), *report and recommendation adopted*, 2024 WL 2864678 (N.D. Ga. June 6, 2024); *United States v. Fabiano*, No. 2:23-cr-00001-RWS-JCF, 2023 WL 9597783 (N.D. Ga. Nov. 21, 2023), *report and recommendation adopted* 2024 WL 196480 (N.D. Ga. Jan. 17, 2024).[5]

Accordingly, the Court overrules Mr. Walker's objections to the R&R on this issue and the motion to dismiss Count One of the Indictment is denied.

### C. Section 922(g)(4)[6]

Section 922(g)(4) provides that "[i]t shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to possess in or affecting commerce, any firearm or ammunition; or to receive any

---

[5] There is admittedly a split among lower courts on this issue. A minority of courts have found that § 922(n)'s prohibition is unconstitutional. *United States v. Quiroz*, 629 F. Supp. 3d 511 (W.D. Tex. 2022), *appeal filed* No. 22-50834 (5th Cir. Sept. 21, 2022); *United States v. Holden*, 638 F. Supp. 3d 931 (N.D. Ind. 2022), *reversed* 70 F.4th 1015 (7th Cir. 2023); *United States v. Stambaugh*, 641 F. Supp. 3d 1185 (W.D. Okla. 2022); *United States v. Hicks*, 649 F. Supp. 3d 357 (W.D. Tex. 2023), *appeal filed* No. 23-50030 (5th Cir. Jan. 12, 2023). The only post-*Bruen* decision from a circuit court of appeals addressing this issue appears to be from the Fifth Circuit, in which the panel rejected a challenge to the constitutionality of § 922(n) on plain error review. *United States v. Avila*, No. 22-50088, 2022 WL 17832287, at *2 (5th Cir. Dec. 21, 2022). The Seventh Circuit's decision in *United States v. Holden*, 70 F.4th 1015 (7th Cir. 2023) does not address the issue directly because the defendant was charged under a different statute—8 U.S.C. § 922(a)(6), which criminalizes knowingly making materially false statements to a firearms dealer regarding the lawfulness of a sale of a firearm.

[6] Section 922(g)(4) provides that "[i]t shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Federal regulations define who qualifies as a person "adjudicated as a mental defective" and who has been "committed to a mental institution" within the meaning of the statute. 27 C.F.R. § 478.11. As the R&R observes, "the societal problem Congress meant to address" through § 922(g)(4) "'are individuals who have been determined to be a danger to themselves or others.'" R&R at 15–16 (citing *United States v. Gould*, 672 F. Supp. 3d 167, 182 (S.D.W. Va. 2023)).

In the R&R, Judge Docherty found that the possession of firearms precluded by § 922(g)(4) is within the plain text of the Second Amendment and then proceeded to the historical inquiry demanded by *Bruen*. Relying on other courts that have addressed the constitutionality of this provision and the historical analogues that are sufficiently similar to it, Judge Docherty concluded that "'because there is a historical basis for disarming individuals that have been determined to be dangerous to themselves and/or the public at large, § 922(g)(4) is constitutional on its face.'" R&R at 16–17 (quoting *United States v. Gould*, 672 F. Supp. 3d 167, 183 (S.D.W. Va. 2023)).

Mr. Walker objects to Judge Docherty's conclusion, arguing that laws that precluded individuals from possessing arms if they posed a real danger of public injury are not relevantly similar to the prohibition in § 922(g)(4). He argues that § 922(g)(4) does not limit its application to only those who present such danger, and instead "criminalizes, indefinitely, anyone who has been adjudicated as a mental defective or who has been committed to a mental institution from possessing firearms." Def.'s Objections at 7–8.

10

The Court is not persuaded that it should reach a different conclusion from the R&R and overrules Mr. Walker's objections. The Court agrees with Judge Docherty that the conduct at issue is presumptively protected by the Second Amendment's text, and that resolution of the motion to dismiss this charge from the indictment turns on the historical analysis required by *Bruen*. But again, the Court notes that in *Heller*, the Supreme Court explained that its opinion did not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," and stated that those prohibitions are "presumptively lawful regulatory measures." 544 U.S. at 626–27, 627 n.26. Of course, the prohibition in § 922(g)(4) does not seek to restrict firearms to every individual who has any kind of mental illness, but instead "seeks to address . . . firearm violence by individuals who have been determined to be a danger to themselves or others." *Gould*, 627 F. Supp. 3d at 182.

The government does not point to a specific regulation from the founding era that prohibited possession of firearms by the mentally ill, but that does not mean that § 922(g)(4) is necessarily unconstitutional. The Court agrees with the R&R's analysis on this issue and its reliance on other cases that have discussed a historical tradition of firearms regulation proscribing possession of firearms by those found to be a danger to themselves or others. R&R at 16–17 (citing *United States v. Daniels*, 77 F.4th 337, 339 (5th Cir. 2023); *Keyes v. Lynch*, 195 F. Supp. 3d 702, 718 (M.D. Pa. 2016); *Gould*, 672 F. Supp. 3d at 183).

Moreover, the Court notes that in *United States v. Veasley*, 98 F.4th 906 (8th Cir. 2024), the Eighth Circuit recently upheld the constitutionality of § 922(g)(3), which prohibits possession of a firearm by a person who is using or addicted to a controlled

11

substance. *Id.* at 908. In reaching that conclusion, the *Veasley* court specifically considered historical analogues concerning "the mentally ill," noting that both mental illness and drug use have similar "behavioral effects." *Id.* at 912. It observed that during Colonial America, those who were "both mentally ill and dangerous" were subject to various forms of confinement that, necessarily, "did not include access to guns." *Id.* at 913–15. The numerous examples in *Veasley* of restrictions placed upon persons deemed mentally ill during the Colonial period further supports the Court's conclusion that the prohibition on firearm possession in § 922(g)(4) is constitutional.

Accordingly, Mr. Walker's motion to dismiss Count Two of the Indictment is denied.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT**

1. The Report and Recommendation, Doc. 43, is **ACCEPTED**;

2. Defendant's Objections to the Report and Recommendation, Doc. 46, are **OVERRULED**;

3. Defendant's Motion to Suppress Statements, Doc. 22, is **GRANTED**; and

4. Defendant's Motion to Dismiss Indictment, Doc. 21, is **DENIED**.

Date: September 3, 2024                    *s/Katherine Menendez*
                                            Katherine Menendez
                                            United States District Judge